```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**VICTORIA M. RUPE,**

              **Plaintiff,**

   vs.                                     **Civil Action 2:07-CV-767**
                                             **Judge Holschuh**
                                             **Magistrate Judge King**

**MICHAEL J. ASTRUE, Commissioner
of Social Security**

              **Defendant.**


## REPORT AND RECOMMENDATION

       This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court on the plaintiff's *Statement of Errors and* the Commissioner's *Memorandum in Opposition.*

       Plaintiff filed her current application for benefits on September 10, 2001, alleging that she has been disabled since August 24, 2001, due to neck, shoulder and leg pain, fibromyalgia, headaches and nerves. *A.R.* 56, 68. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

       On March 12, 2003, plaintiff, represented by counsel, appeared and testified at the administrative hearing, as did W. Bruce Walsh, Ph.D., who testified as a vocational expert. In a decision dated July 2, 2003, the administrative law judge found that plaintiff's severe impairments consist of fibromyalgia, history of headaches, depressive

disorder and anxiety disorder. However, the administrative law judge also found that these impairments, whether considered singly or in combination, neither meet nor equal any listed impairment. Relying on the evaluations of two of plaintiff's treating physicians and a consultative psychologist, the administrative law judge concluded that plaintiff has the residual functional capacity for a reduced range of light work[1] and a full range of sedentary work.  Relying on the testimony of the vocational expert, the administrative law judge concluded that there exist a significant number of jobs in the regional and national economies that plaintiff can perform despite her lessened capacity. The administrative law judge concluded that plaintiff is therefore not disabled within the meaning of the Social Security Act.

That decision became the final decision of the Commissioner of Social Security when the Appeals Council denied review on June 2, 2007.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See*

---

[1] The administrative law judge found that the claimant has the residual functional capacity to: occasionally lift/carry 11-20 pounds, sit for 4 hours in an 8-hour workday, stand/walk for 4 hours in an 8-hour workday, 1 hour at a time; and occasionally bend, squat, crawl and climb ladders and stairs. Additionally the claimant is mildly to moderately limited in sustained concentration, persistence and pace and mildly limited in her ability to remember locations, respond appropriately to changes in the work setting, to behave predictably and reliably in an emotionally stable manner and to tolerate usual work pressures. *A.R*. 31, Finding 7.

2

*Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion, *see Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

Victoria M. Rupe was born in 1953. She is a high school graduate and has vocational training as a licensed practical nurse ("LPN").

Plaintiff testified at the administrative hearing that she stopped working because "I supposedly called in medications for myself." *A.R.* 226. She began taking Lortab for migraine headaches, which developed following a motor vehicle accident in 1988. *A.R.* 227. Her migraine headaches are "blinding" and cause her to shut the blinds, turn off the lights and go to bed. *A.R.* 230, 249. Plaintiff suffered from the headaches even while she was working. She missed approximately three weeks of work during the year 2001, because of headaches. *A.R.* 230. At the time of the hearing, plaintiff averages about one migraine headache per week. She also complained of fibromyalgia that causes neck

and shoulder pain and leg cramps. *A.R.* 228. Plaintiff's fibromyalgia -- the preferred treatment for which is to "keep moving," *A.R.* 228-29 -- worsened after she stopped working because she was not physically active. She is unable to lift her hands over her head. Daily chores at home are difficult. Plaintiff also testified that she suffers from depression and anxiety, for which she takes Depakote, Paxil and Klonopin. *A.R.* 231-32. She also took Xanax when she became "really stressed out." *A.R.* 232. Medication and therapy have helped her psychological symptoms. Id.

Plaintiff also suffers from confusion and memory problems; her husband is afraid for her to drive because of these problems. *A.R.* 243. Interruptions in her activity cause her to become forgetful and confused. *A.R.* 233.

On a typical day, plaintiff runs the sweeper, cooks, does laundry, goes shopping, watches birds and reads books. *A.R.* 234-35. She estimates that she can lift twenty pounds and stay on her feet for "three or four hours at a time." *A.R.* 239. She can sit for an hour or an hour and a half at a time. *A.R.* 240.

The medical evidence of record begins with clinic notes from Michael Shannon, M.D., a neurologist who treated plaintiff for chronic headaches through 2003. *A.R.* 129. In March 2003, Dr. Shannon opined that plaintiff could lift 11-20 pounds, stand for 1 hour at a time for a total of four hours in an 8-hour workday, walk for 1 hour at a time for a total of 4 hours in an 8-hour workday, and sit for four hours at a time for a total of 6 hours in an 8-hour workday. In addition, plaintiff could occasionally bend, squat, crawl and climb stairs and ladders. Stress increases plaintiff's headache symptoms. *A.R.* 212-213.

4

Plaintiff began seeing her treating family physician, Shelly Dunmyer, M.D., in October 2001. *A.R.* 164. In February 2003, Dr. Dunmyer opined that Plaintiff could frequently lift 11-20 pounds, stand for 4 hours in an 8-hour day, walk for 4 hours in an eight-hour day and sit for 8 hours in an 8-hour day. In addition, plaintiff could occasionally bend, squat, crawl and climb stairs and ladders. Plaintiff's condition, including her fibromyalgia, was likely to deteriorate if she were placed under stress. *A.R.* 191-192.

On October 8, 2001 plaintiff underwent a consultative psychological evaluation by Margaret Smith, Ph.D., at the request of the state agency. *A.R.* 132-39. Plaintiff reported that she is depressed every day and suffers panic attacks once or twice a week or when she is under "a lot" of stress. *Id*. Her daily activities include making the bed, running the sweeper, doing laundry, cooking dinner, taking daily walks, driving once a week and doing crafts and gardening. *Id*. On examination, plaintiff displayed normal speech and mood, some suicidal ideation, without intent, and no homicidal ideation, hallucinations, delusions, paranoia, psychotic thoughts or signs of anxiety or psychomotor retardation. *Id*. She had normal intellectual functioning and a normal memory. *Id*. Dr. Smith diagnosed major depression and panic disorder, improving, and opined that plaintiff could relate to supervisors, co-workers and the general public, and could perform simple, moderate and low complex tasks. Her abilities to maintain attention and concentration would be affected by the level of her depression and panic attacks, and she would have some difficulty responding to work stresses. Dr. Smith further opined that a primary treatment strategy should be plaintiff's mobilization/return to work.

*Id.*

In October 2001, state agency psychologist, Deryck Richardson, Ph.D., reviewed the record and found no evidence of a severe mental impairment. *A.R.* 141-153.

In December 2001, plaintiff was referred to Six County, Inc. by the Genesis Alcohol and Drug Program following the incident involving her calling in a prescription for Lortab. *A.R.* 158-160. During the initial evaluation, plaintiff denied abuse of alcohol, illicit drugs and prescription medication other than in connection with the August 2001 incident. Plaintiff reported that she had been depressed for a long time, but stated that her depression had increased during the past couple of years. She asked that a psychiatrist adjust her medications and requested counseling to more fully understand her August 2001 behavior. Clinical examination revealed a blunted affect and depressed mood, but normal thought processes, speech and recall and no evidence of delusions or paranoia. Although she reported mood swings, she denied symptoms of manic or hypomanic episodes. Patricia Morrison, R.N., diagnosed major depressive disorder and generalized anxiety disorder, with a Global Assessment of Functioning ["GAF"] of 55, which is indicative of moderate symptomatology. *Id*. Plaintiff also saw Bonnie Taylor, L.S.W., at Six County in 2002 for counseling *A.R.* 205-209, and Darrell Smith, M.D., for psychiatric care.

On February 8, 2003, Nicolaas Dubbeling, Ph.D., conducted a psychological evaluation for the Ohio Board of Nursing to determine whether plaintiff would be permitted to resume employment as an LPN. *A.R.* 180-89. During the evaluation, plaintiff complained of forgetfulness but stated that she had no difficulty completing ordinary

6

tasks. *Id.* Plaintiff told Dr. Dubbeling that she could not work as a nurse because she was confused, had trouble remembering daily chores and was afraid that she might make a fatal mistake if she returned to nursing. Upon examination, plaintiff manifested good conversational skills and had no difficulty expressing thoughts; her judgment and memory were unimpaired. *Id.* On the MMPI, according to Dr. Dubbeling, plaintiff over-reported her psychopathology. *Id.* Dr. Dubbeling diagnosed bipolar disorder and cognitive disorder, NOS (294.9), to account for forgetfulness and disorientation. He assigned a GAF of 65-70, which is suggestive of no more than mild symptomatology. *Id.* Dr. Dubbeling specifically concluded that significant cognitive dysfunctioning was not suggested by test data. *Id.*

On March 7, 2003, Dr. Dubbeling opined that plaintiff had unlimited ability to interact with others, mildly or mildly-to-moderately limited ability to sustain concentration and persistence in the face of interruptions and mildly limited ability to handle work pressure and to respond appropriately to changes in the work setting. Plaintiff's condition was not likely to deteriorate if she were "placed under stress, particularly that of a job." *A.R.* 200-02.

Dr. Walsh, the vocational expert, was asked to assume a claimant with plaintiff's vocational profile and the limitations identified by Dr. Shannon in March 2003. A.R. 250. According to Dr. Walsh, plaintiff could perform approximately 70% of the light, unskilled occupational job base and a full range of sedentary work. *A.R.* 251. Asked to assume the mental limitations identified by Dr. Dubbeling, Dr. Walsh testified that such a claimant could not perform plaintiff's past relevant work, but could perform the unskilled jobs that he had

7

previously identified. *A.R.* 252. Dr. Walsh further testified that the limitations identified by Dr. Margaret Smith were also consistent with an ability to perform the unskilled work he had previously identified. *A.R.* 257.

Plaintiff challenges the administrative law judge's failure to give controlling weight to the opinion of plaintiff's treating psychiatrist, Dr. Darrell Smith. Dr. Smith submitted a mental residual functional capacity assessment on March 16, 2004. In that assessment, Dr. Smith opined that plaintiff had poor stress tolerance and was likely to decompensate if exposed to the ordinary stresses of the work place. He concluded that plaintiff has marked impairment in her ability to perform and complete work tasks in the normal work day or week at a consistent pace, in her ability to carry through instructions and complete tasks independently, in her ability to maintain attention and concentration and in her ability to remember locations and work day procedures and instructions. *A. R.* page 217-220.[2]

Dr. Smith's assessment was not before the administrative law judge, but was submitted to the Appeals Council. However, because the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of the administrative law judge's decision. *See Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

Plaintiff further challenges the administrative law judge's determination that there are a significant number of jobs in the national economy that plaintiff could perform despite her severe

---

[2] There is no page 218 in the Administrative Record.

impairments. Plaintiff specifically challenges the administrative law judge's finding that plaintiff can perform 70% of unskilled, light work and a full range of sedentary work.

The Administrative law judge's residual functional capacity findings are supported by two of plaintiff's treating and examining physicians, Drs. Shannon and Dunmyer, and by the consulting psychologist, Dr. Margaret Smith.

Dr. Shannon's clinical findings were benign, *A.R.* 127, 211, and his functional capacity assessment, *A.R.* 212-13, was consistent with the administrative law judge's residual functional capacity evaluation. Dr. Dunmeyer's findings were also essentially benign and her functional capacity assessment, *A.R.* 191-92, was consistent with that of the administrative law judge, although Dr. Dunmeyer also indicated that plaintiff's fibromyalgia would likely deteriorate with work-related stress. Dr. Margaret Smith diagnosed major depression and panic disorder, improving, but nevertheless concluded that plaintiff could perform simple to low-complex tasks. *A.R.* 139. Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(d)(2). If the administrative law judge finds that either of these criteria have not been met, he must then apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the

treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §404.1527(d)(2),(4).

To the extent that plaintiff contends that the administrative law judge improperly concluded that plaintiff is able to perform a limited range of light work, plaintiff is in error. The residual functional capacity determination is expressly reserved to the Commissioner. *See, e.g.,* 20 C.F.R. §§404.1527(e)(2), 404.1546. Where substantial evidence supports the administrative law judge's residual functional capacity assessment, the Court may not revisit that assessment. This Court's review of the administrative law judge's decision establishes that the residual function capacity found by the administrative law judge was supported by the opinions of Drs. Shannon and Dunmyer, the only two physicians to render an opinion as to plaintiff's residual functional capacity prior to the administrative law judge's decision. Accordingly, the findings of the administrative law judge in this regard enjoy substantial support in the record.

Plaintiff also complains that the administrative law judge are inconsistent with the conclusions of the consultative psychologist, Margaret Smith, Ph. D. The administrative law judge clearly addressed Dr. Smith's opinion, *A.R.* 25, and incorporated Dr. Smith's opinion in his residual functional capacity in finding that plaintiff had a mildly-to-moderately limited ability to sustain attention, concentration and pace, and mildly limited ability to respond appropriately to changes in the work setting and to tolerate usual work pressures *A.R.* 31.

The administrative law judge's residual functional capacity findings are further supported by his findings regarding plaintiff's credibility. *See A.R.* 28. The record as a whole does not substantiate the plaintiff's allegation of a disabling impairment. Plaintiff reported or testified that she is able to engage in daily activities such as shopping, cooking, cleaning, ironing, laundry, washing dishes, and running the sweeper. *A.R.* 82-83, 101-03, 134-35, 234. Dr. Dubbeling also assigned plaintiff a GAF of 65-70, *A.R.* 190, which indicates only mild symptoms or some difficulty in social or occupational functioning. None of plaintiff's treating providers have stated that plaintiff is unable to work. *A.R.* 29.

A claimant's subjective complaints must be supported by objective evidence in order to serve as a basis for a finding of disability. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). *See also* 42 U.S.C. §423(d)(5)(A). In evaluating subjective complaints, the Court looks to the record to determine whether there is objective medical evidence of an underlying medical condition. If so, then the Court must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Stanley v. Secretary of Health and Human Services,* 29 F.3d 115, 117 (6th Cir. 1994) (*quoting Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). The administrative law judge in this action carefully considered the evidence, applied the appropriate standards for considering plaintiff's subjective allegations and reached a conclusion that enjoys substantial

11

support in the record.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


July 28, 2008                               *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge